George M. Kryder
  State Bar No. 11742900
  gkryder@velaw.com
Jeremy M. Reichman
  State Bar No. 24083722
  jreichman@velaw.com
Michael C. Lee
  State Bar No. 24109461
  mlee@velaw.com
Emalee H. LaFuze
  State Bar No. 24110897
  elafuze@velaw.com
Vinson & Elkins LLP
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Telephone: (214) 220-7700

*Attorneys for Defendants Chapman and Cutler LLP
and Catherine Rossouw*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



| | |
|---|---|
| IN RE: § § | CASE NO. 23-30246-MVL-7 |
| WITH PURPOSE, INC. § § | CHAPTER 7 |
| *Debtor* § § § | |
| SCOTT M. SEIDEL, TRUSTEE, § § | ADVERSARY NO. 25-03037-MVL |
| *Plaintiff*, § § § | |
| v. § § | |
| CHAPMAN AND CUTLER LLP AND CATHERINE ROSSOUW, § § § § | |
| *Defendants*. § | |

**APPENDIX SUPPORTING DEFENDANTS CHAPMAN AND CUTLER LLP'S AND CATHERINE ROSSOUW'S MOTION TO COMPEL ARBITRATION AND STAY ADVERSARY PROCEEDING**

Defendants Chapman and Cutler LLP and Catherine Rossouw respectfully submit the following appendix in support of their Motion to Compel Arbitration and Stay Adversary Proceeding:

APPENDIX SUPPORTING DEFENDANTS CHAPMAN AND CUTLER LLP'S AND CATHERINE ROSSOUW'S MOTION TO
COMPEL ARBITRATION AND STAY ADVERSARY PROCEEDING – PAGE 1

1

Case 25-03037-mvl    Doc 15    Filed 04/28/25    Entered 04/28/25 13:25:03    Desc Main
Document    Page 2 of 12

| EXHIBIT | DESCRIPTION | PAGES |
|---|---|---|
| **1** | February 4, 2022 Engagement Letter for Legal Services Between With Purpose, Inc. d/b/a GloriFi, Inc. and Chapman and Cutler LLP | 3-9 |
| **2** | September 1, 2022 American Arbitration Association Commercial Arbitration Rules and Mediation Procedures (Excerpt) | 10-12 |

Respectfully submitted,

*/s/ George M. Kryder*
George M. Kryder
  State Bar No. 11742900
  gkryder@velaw.com
Jeremy M. Reichman
  State Bar No. 24083722
  jreichman@velaw.com
Michael C. Lee
  State Bar No. 24109461
  mlee@velaw.com
Emalee H. LaFuze
  State Bar No. 24110897
  elafuze@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Telephone: (214) 220-7700

*Attorneys for Defendants Chapman and Cutler LLP and Catherine Rossouw*

## CERTIFICATE OF SERVICE

I certify that on April 28, 2025, a true and correct copy of the foregoing instrument was served on all counsel of record using the Court's electronic filing system.

*/s/ George M. Kryder*
George M. Kryder

APPENDIX SUPPORTING DEFENDANTS CHAPMAN AND CUTLER LLP'S AND CATHERINE ROSSOUW'S MOTION TO
COMPEL ARBITRATION AND STAY ADVERSARY PROCEEDING – PAGE 2

**2**

**CHAPMAN**
Focused on Finance

**Catherine Rossouw**
Partner

1270 Avenue of the Americas
30th Floor
New York, New York 10020-1708

D 212.655.2536
rossouw@chapman.com

Exhibit 1

February 4, 2022

With Purpose, Inc. d/b/a/ GloriFi, Inc.
11700 Preston Road, Suite 660-394
Dallas, Texas 75013
Attention: Stephen Curry

Re:     Engagement for Legal Services

Dear Stephen:

This letter agreement (this "*Agreement*") sets forth the terms of your agreement to engage Chapman and Cutler LLP (the "*Chapman*" or the "*Firm*") to represent With Purpose, Inc. d/b/a GloriFi, Inc. (the "*Client*" or "*you*") in the Matter (as defined below). The Firm will not represent anyone else in the Matter (including, for example, any principals, owners, officers, directors or employees of the Client).

*Scope of Representation*. The Firm agrees to represent the Client in connection with (i) the review of agreements between Client and its third party bank partner associated with the marketing and servicing of credit card accounts for a proposed credit card program to be sponsored by Client, (ii) the review of agreements regarding the purchase of receivables arising the credit card accounts from the third party bank partner by Client or a designated third party and the servicing thereof after purchase, (iii) the review and assistance with consumer licensing matters related to such proposed credit card program for Client, and (iv) the structuring, drafting, negotiation and review of documents and disclosures relating to the securitization of the receivables generated under such proposed credit card program for Client (collectively, the "*Matter*") and not as to other matters unless the Client separately retains the Firm to represent it in such other matters.

*Limited Representation*. The Firm's engagement is limited to performance of the legal services described above. Because we are not your general counsel, our acceptance of this engagement does not involve an undertaking to represent your interests generally. Likewise, our engagement does not include accounting, business, financial or investment advice or counseling (including, without limitation, the financial feasibility or prudence of any transaction). We understand that you do not intend or expect to rely on us for such matters. If, during the course of the engagement, such matters are discussed with us and we share with you our experience or any observation on those subjects, the discussion should not be regarded as an expansion of this engagement for legal services.



With Purpose, Inc. d/b/a/ GloriFi, Inc.
February 4, 2022
Page 2

*Fees and Expenses*.  The Firm will charge for the legal services that we provide and the expenses we incur in connection with this representation.  The fees charged by the Firm will be based on the time that we devote to such work at our normal hourly rates from time-to-time in effect for the Firm's lawyers (which currently range from $340 to $1,170) and paralegals and law clerks (which currently range from $270 to $310).  These rates are revised from time to time; additionally, the rates for attorneys are normally adjusted on January 1 to reflect their increased seniority and experience.

In addition, we will bill you for expenses and charges incurred in connection with performing services for you, including express delivery services, filing fees, application fees, travel expenses, messengers, searches of official records, service of process, and transcripts.  We will not bill for photocopying or telephone calls.  Billing for ancillary services and expenses may lag the rendering or use of those services by several months because of delays in the receipt of third-party bills and the posting of accounts.

Our statement for fees and other charges will be rendered periodically and paid promptly after presentation of our invoice.

In addition, **we will require an initial retainer in the amount of $195,000**.  We will deposit the retainer into the Firm's trust account.  The retainer may be applied against any outstanding invoice and, as the retainer is depleted below $100,000, we may request that the retainer be replenished.  We will return any balance remaining on the retainer at the termination of this engagement.  For your convenience, wire transfer instructions are attached as Exhibit A.

If our services are terminated for any reason, we will be entitled to payment of legal fees and other out of pocket expenses for the services actually performed prior to the date our engagement is terminated.  It is understood that our right to payment of accrued legal fees is not contingent upon a successful closing of any transactions contemplated by the Matter.

*Consent Regarding the Firm Privileged Communications*.  It may be necessary or appropriate for the Firm or Firm lawyers to consult (at the Firm's own expense) with the Firm's General Counsel, other Firm lawyers or external counsel regarding our rights and responsibilities concerning the Firm's engagement with the Client.  In such instances, a conflict of interest may arise between the Firm and the Client as to the subject matter of such consultation.  The Client consents to such consultations, waives any conflict of interest that may result from the consultations, and acknowledges that such consultations are protected by the Firm's (i.e., not the Client's) attorney-client privilege.



With Purpose, Inc. d/b/a/ GloriFi, Inc.
February 4, 2022
Page 3

    *Consent to Adverse Party Conflict*. Chapman, as a law firm, may be asked in other matters to represent persons or entities whose interests are adverse to yours. By signing this engagement letter, you agree that we will not be precluded from accepting separate engagements from existing or new clients in matters in which you may have an adverse interest provided that (a) such separate engagements are with respect to matters that are wholly unrelated to any matters in which we represent or have represented you, and in representing such other clients, we will keep confidential and not use or disclose any proprietary, sensitive or otherwise confidential information that we obtained in representing you, and (b) as a result of our representation of you, we have not obtained proprietary or other confidential information of a nonpublic nature, that, if known to such other client, could be used in any such matter by such client to your disadvantage.

    *Conclusion of Representation*. Following the conclusion of our representation, we will keep confidential any non-public information that the Client has supplied to us that we retain in accordance with applicable rules of professional conduct. At the Client's request, we will return the Client's papers and property to the Client. The Firm will retain its own files pertaining to the matter in accordance with the Firm's then existing records retention program. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such documents or other materials after the termination of the engagement in accordance with our then existing records retention program.

    *Termination of Representation*. This engagement and the attorney-client relationship created by this matter will end when we have completed the legal services discussed in the scope of representation describe above. If the Client later engages us for any related or additional matter, that engagement and its scope must be confirmed in a separate engagement letter, an email or in a written supplement to this Agreement.

    The Client may terminate the engagement at any time, and for any reason, by informing us in writing. Similarly, we may terminate or withdraw from our representation of the Client at any time, provided we comply with the applicable rules governing our professional conduct. If we decide to so withdraw, the Client agrees to take all steps necessary to release us from any further obligation to represent the Client, including signing any documents necessary to complete our withdrawal. In the event of a termination or our withdrawal, the Client will pay us for all fees and charges through such point.

    After the conclusion of this matter, the Client may ask us, or we might be compelled, to undertake certain post-engagement tasks relating to this matter, such as responding and objecting to subpoenas, searching for and producing documents, preparing for testimony, testifying in a proceeding, performing work relating to transitioning a matter to new attorneys, or similar activities. In such case, we will promptly notify the Client, and the Client agrees to compensate



With Purpose, Inc. d/b/a/ GloriFi, Inc.
February 4, 2022
Page 4

us for our fees and the expenses we incur, including payment for time spent by our attorneys and other timekeepers calculated at our then-current hourly rates. Nothing in this Agreement, however, obligates our attorneys or personnel to submit to interviews or provide testimony, and any post-engagement work shall not constitute the performance of legal services for the Client or create or revive an attorney-client relationship between the Client and the Firm.

*Disputes*. Part 137 of the Rules of the Chief Administrator of the Courts provides a procedure for the arbitration (and in some cases mediation) of fee disputes between attorneys and their clients in certain civil matters where the fee dispute is more than $1,000 or less than $50,000. If the Client has a fee dispute between $1,000 and $50,000, the Client may elect to resolve any fee dispute by arbitration before the New York State Fee Dispute Resolution Program. The arbitration will be binding on the Firm and the Client unless either the Firm or the Client seeks a trial within 30 days of the arbitration decision. If the Client elects to arbitrate a fee dispute, the Firm will provide the Client with the appropriate forms to commence the arbitration procedure.

All other claims arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in New York, New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and Judgment upon the award rendered by the arbitrator(s) may be entered in any Court having jurisdiction thereof.

*Governing Law*. This Agreement is governed by the laws of the State of New York, without regard to its conflict of laws provisions, and may be executed in counterparts.

*Lawyer Review*. Although we are fully confident that we can represent you, you may wish to consult with an independent attorney to assist you in deciding whether to retain our law firm and sign this engagement letter, and we encourage you to do so. Of course, we are happy to speak with you further if you have any questions about this Agreement, our earlier discussions, or anything else that bears on your decision about whether to retain the Firm.



If this letter accurately reflects our agreement to represent you, please sign this letter and return it to me. We look forward to representing you in this matter.

                               Sincerely yours,

                               By: _____
                               Name: Catherine Rossouw

                               CHAPMAN AND CUTLER LLP

Agreed this ____ day of February, 2022:

With Purpose, Inc. d/b/a/ GloriFi, Inc.

By: _____
    Name: Stephen Curry
    Title:

**CHAPMAN**
Focused on Finance

If this letter accurately reflects our agreement to represent you, please sign this letter and return it to me. We look forward to representing you in this matter.

Sincerely yours,

CHAPMAN AND CUTLER LLP

Agreed this 8 day of February, 2022:

With Purpose, Inc. d/b/a/ GloriFi, Inc.

By: _____
Name: Stephen Curry
Title: CEO

EXHIBIT A: WIRE INSTRUCTIONS

JPMorgan Chase Bank
ABA #021000021
Account #937125664
Account Name: Chapman and Cutler LLP IOLA Attorney Trust Account
Reference: GloriFi Retainer

9

**Exhibit 2**



# Commercial
Arbitration Rules and Mediation Procedures

**Including Procedures for Large, Complex Commercial Disputes**



AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/commercial**

Rules Amended and Effective September 1, 2022

**10**

amount involved. The filing fee as specified in the applicable AAA Fee Schedule must be paid at the time of filing. The claimant may file an answering statement or reply in response to the counterclaim with the AAA within 14 calendar days after notice of the filing of the counterclaim is sent by the AAA.

(c) If the respondent alleges that a different arbitration provision is controlling, the matter will be administered in accordance with the arbitration provision submitted by the initiating party subject to a final determination by the arbitrator.

(d) If the counterclaim does not meet the requirements for filing a claim and the deficiency is not cured by the date specified by the AAA, it may be returned to the filing party.

## R-6. Changes of Claim

(a) A party may at any time prior to the close of the hearing or by any earlier date established by the arbitrator increase or decrease the amount of its claim or counterclaim. Written notice of the change of claim amount must be provided to the AAA and all parties. If the change of claim amount results in an increase in the administrative fee, the balance of the fee is due before the change of claim or counterclaim amount may be accepted by the arbitrator. After the arbitrator is appointed, however, a party may increase the amount of its claim or counterclaim, or alter its request for non-monetary relief, only with the arbitrator's consent.

(b) Any new or different claim or counterclaim, as opposed to an increase or decrease in the amount of a pending claim or counterclaim, shall be made in writing and filed with the AAA, and a copy shall be provided to the other party, who shall have 14 calendar days from the date of such transmittal within which to file an answer to the proposed change of claim or counterclaim with the AAA. After the arbitrator is appointed, however, no new or different claim or counterclaim may be submitted except with the arbitrator's consent.

(c) A party that filed a claim or counterclaim of an undisclosed or undetermined amount must specify the amount of the claim or counterclaim to the AAA, all parties, and the arbitrator at least seven calendar days prior to the commencement of the hearing or by any other date established by the arbitrator. If the disclosed amount of the claim or counterclaim results in an increased filing fee, that fee must be paid at the time the claim or counterclaim amount is disclosed. For good cause shown and with the consent of the arbitrator, a party may proceed to the hearing with an undisclosed or undetermined claim or counterclaim, provided that the final amount of the claim or counterclaim is set forth in a post-hearing brief or submission and any appropriate filing fee is paid.

## R-7. Jurisdiction

(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court.

**(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

### R-8. Consolidation and Joinder

**(a)** Consolidation

  i) Two or more arbitrations may be consolidated if all parties to all of the arbitrations to be consolidated so agree.

  ii) Unless all parties agree to consolidation, the party requesting consolidation of two or more arbitrations must file with the AAA and serve on all other parties a written request for consolidation with the supporting reasons for such request within 90 days of the date the AAA determines that all administrative filing requirements were satisfied for the last-filed case that is part of the consolidation request. Such time limit may be extended by the arbitrator appointed in the first-filed case upon a showing of good cause for the late request. The other parties to the arbitrations shall provide their written responses to the consolidation request within 10 calendar days after the AAA sends notice of receipt of the request.

  iii) At its discretion, the AAA either may direct that the consolidation request be decided by the arbitrator appointed in the first-filed case or may appoint a consolidation arbitrator for the sole purpose of deciding the consolidation request.

  iv) The arbitrator deciding consolidation may order consolidation of two or more cases for all purposes or for such limited purposes and under such conditions as the arbitrator may direct.

  v) Absent agreement of all parties, an arbitrator appointed for the sole purpose of deciding the consolidation request shall have no further power to act, and shall be removed from the case, after the consolidation request is decided.

  vi) In deciding whether to consolidate, the arbitrator or consolidation arbitrator shall take into account all relevant circumstances, including:

   a) the terms and compatibility of the agreements to arbitrate,

   b) applicable law,

   c) the timeliness of the request to consolidate and the progress already made in the arbitrations,

   d) whether the arbitrations raise common issues of law and/or fact, and