George M. Kryder
  State Bar No. 11742900
  gkryder@velaw.com
Jeremy M. Reichman
  State Bar No. 24083722
  jreichman@velaw.com
Michael C. Lee
  State Bar No. 24109461
  mlee@velaw.com
Emalee H. LaFuze
  State Bar No. 24110897
  elafuze@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, Texas 75201
Telephone: (214) 220-7700

*Attorneys for Defendants Chapman and Cutler LLP
and Catherine Rossouw*

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 23-30246-MVL-7 |
| WITH PURPOSE, INC. | § | |
| | § | CHAPTER 7 |
| *Debtor* | § | |
| | § | |
| SCOTT M. SEIDEL, TRUSTEE, | § | |
| | § | ADVERSARY NO. 25-03037-MVL |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | |
| | § | |
| CHAPMAN AND CUTLER LLP AND | § | |
| CATHERINE ROSSOUW, | § | |
| | § | |
| *Defendants.* | § | |

**BRIEF SUPPORTING DEFENDANTS CHAPMAN AND CUTLER LLP'S AND
CATHERINE ROSSOUW'S MOTION TO DISMISS TRUSTEE'S ORIGINAL
COMPLAINT SUBJECT TO MOTION TO COMPEL ARBITRATION**

TO THE HONORABLE MICHELLE V. LARSON, UNITED STATES BANKRUPTCY JUDGE:

# TABLE OF CONTENTS

**Page**

I.      Statement of Facts ............................................................................................7

II.     Chapman is Immune From Suit Under the Attorney Immunity Doctrine Because
        the Trustee Complains Only About Conduct Within the Scope of Chapman's
        Representation of Neugebauer. ........................................................................9

III.    The Trustee Failed to Plausibly Plead That Chapman Proximately Caused
        GloriFi's Alleged Damages. ...........................................................................12

        A.      The Trustee's Conclusory Allegations Fail to Plausibly Plead That
                Chapman was the "But For" Cause of GloriFi's Purported Injuries. ...................13

        B.      The Trustee's Allegations in the Neugebauer Adversary Proceeding
                Confirm That He Cannot Plausibly Allege Chapman was the "But For"
                Cause of GloriFi's Purported Harm. ...................................................15

IV.     The Trustee's Breach-of-Fiduciary-Duty Claim Fails Because it is Barred Under
        the Anti-Fracturing Rule. ...............................................................................17

V.      The Trustee's Breach-of-Fiduciary-Duty Claim Also Fails Because the Trustee
        Failed to Properly Plead That Chapman Received an "Improper Benefit." ..................19

VI.     The Trustee's Fraudulent-Transfer Claims For Chapman's Pre-Petition Legal
        Services Also Fail. .........................................................................................19

VII.    The Trustee's Disallowance Claim Fails Because Chapman Never Filed a Proof
        of Claim. ......................................................................................................20

VIII.   Conclusion ...................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*,
   299 S.W.3d 106 (Tex. 2009) ................................................................................ 12

*Alexander v. Turtur & Assocs., Inc.*,
   146 S.W.3d 113 (Tex. 2004) ................................................................................ 13

*Antonelli v. Guastamacchia*,
   17 N.Y.S.3d 436 (2nd Dept. 2015) ..................................................................... 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................... 12, 14

*Ashton v. KoonsFuller, P.C.*,
   No. 05-16-00130-CV, 2017 WL 1908624 (Tex. App.—Dallas May 10, 2017, no pet.) ......... 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 12, 14

*Cinel v. Connick*,
   15 F.3d 1338 (5th Cir. 1994) ................................................................................ 9

*Cobble Creek Consulting, Inc. v. Sichenzia Ross Friedman Ference LLP*,
   973 N.Y.S.2d 595 (1st Dept. 2013) ..................................................................... 17

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ................................................................................ 7

*Couch v. Bank of New York Mellon as Tr. for JPMorgan Chase Bank, N.A.*,
   No. 4:24-CV-00085-O, 2024 WL 846267  (N.D. Tex. Feb. 28, 2024) ..................... 9

*Diamond Beach Owners Ass'n v. Stuart Dean Co., Inc.*,
   No. 3:18-CV-00173, 2018 WL 7291722 (S.D. Tex. Dec. 21, 2018) report and
   recommendation adopted, 2019 WL 245462 (S.D. Tex. Jan. 17, 2019) ................. 15

*Harrison v. Taft, Stettinius & Hollister, L.L.P.*,
   381 F. App'x 432 (5th Cir. 2010) ....................................................................... 15

*Hou v. Berry Appleman & Leiden, LLP*,
   No. 3:21-CV-2958-D, 2022 WL 2276903 (N.D. Tex. June 23, 2022) ................... 18

*In re Cyr*,
   No. AP 18-05227-CAG, 2020 WL 10731249 (W.D. Tex. June 8, 2020) ............... 18

*In re Katrina Canal Breaches Litigation*,
   495 F.3d 191 (5th Cir. 2007) ................................................................................ 8

*In re Soporex, Inc.*,
   446 B.R. 750 (Bankr. N.D. Tex. 2011) ................................................................. 9

*Ironshore Europe DAC v. Schiff Hardin, L.L.P.*,
   912 F.3d 759 (5th Cir. 2019) .............................................................................. 10

*Knox v. Aronson, Mayefsky & Sloan, LLP,*
    91 N.Y.S.3d 23 (1st Dept. 2018) ........................................................................ 13

*LJH, Ltd. v. Jaffe,*
    No. 4:15-CV-639, 2016 WL 3668170 (E.D. Tex. July 11, 2016) ........................... 10

*Norris v. Hearst Trust,*
    500 F.3d 454 (5th Cir. 2007) ................................................................................ 8

*Perkins v. Walker,*
    No. 14-17-00579-CV, 2018 WL 3543525 (Tex. App.—Houston [14th Dist.] July 24,
    2018, no pet.) ..................................................................................................... 18

*Pierre v. Steinbach,*
    378 S.W.3d 529 (Tex. App.—Dallas 2012, no pet.) ............................................. 15

*R.R. Mgmt. Co., L.L.C. v. CFS Louisiana Midstream Co.,*
    428 F.3d 214 (5th Cir. 2005) ............................................................................... 12

*Reibman v. Senie,*
    756 N.Y.S.2d 164 (1st Dept. 2003) ...................................................................... 13

*Rogers v. Zanetti,*
    518 S.W.3d 394 (Tex. 2017) .......................................................................... 12, 13

*Stanfield v. Neubaum,*
    494 S.W.3d 90 (Tex. 2016) ................................................................................. 13

*Streber v. Hunter,*
    221 F.3d 701 (5th Cir. 2000) ............................................................................... 10

*Taylor v. Hartley,*
    488 F. Supp. 3d 517 (S.D. Tex. 2020) ................................................................... 7

*Tolpo v. Decordova,*
    146 S.W.3d 678 (Tex. App.—Beaumont 2004, no pet.) ....................................... 15

*Troice v. Proskauer Rose, L.L.P.,*
    816 F.3d 341 (5th Cir. 2016) ............................................................................ 9, 10

*Van Hauen v. Wells Fargo Bank, N.A.,*
    No. 4:12-CV-344, 2012 WL 4092590 (E.D. Tex. Aug. 16, 2012) ......................... 10

*Vara v. Williams,*
    No. 03-10-00861-CV, 2013 WL 1315035 (Tex. App.—Austin Mar. 28, 2013, no pet.) ......... 19

*Won Pak v. Harris,*
    313 S.W.3d 454 (Tex. App.—Dallas 2010, pet. denied) .................................. 17, 19

*Young v. Dwayne R. Day, P.C.,*
    No. 01-16-00325-CV, 2018 WL 1473931 (Tex. App.—Houston [1st Dist.] Mar. 27,
    2018, pet. denied) .............................................................................................. 19

*Youngkin v. Hines,*
    546 S.W.3d 675 (Tex. 2018) ............................................................................... 10

**Rules**

Fed. R. Bankr. P. 7012 ................................................................................................ 7, 18

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 7, 8, 10, 18

Fed. R. Evid. 201 .................................................................................................... 8, 20

Trustee Scott M. Seidel (the "Trustee") complains that Chapman & Cutler LLP and its partner Catherine Rossouw (collectively, "Chapman") breached duties to With Purpose, Inc. ("GloriFi") arising from a written engagement letter by concurrently representing GloriFi's founder and CEO, Toby Neugebauer ("Neugebauer"), on ***different*** matters that were fully disclosed to GloriFi, which waived any potential conflicts. Regardless of whether Chapman owed separate duties to GloriFi as a concurrent client under the engagement letter, the Trustee still cannot sue Chapman for legal work Chapman performed solely for its ***other client***, Neugebauer, which is all the Trustee complains about. As a matter of law, Chapman is immune from suit for any legal work it performed in the course of representing another client – Neugebauer – and thus the Trustee's claims are barred by attorney immunity.

Moreover, while the Trustee alleges that Chapman had a conflict in representing Neugebauer and that Neugebauer allegedly destroyed GloriFi's value, the Trustee fails to plead any non-conclusory, plausible facts explaining how Chapman's purported conflict had anything to do with Neugebauer's actions or GloriFi's demise. The Trustee has not plausibly pled that, "but for" Chapman's purported conflict, Neugebauer would have taken different actions or that GloriFi would have survived. In fact, the Trustee has made the opposite allegation in its parallel adversary proceeding against Neugebauer, in which the Trustee represents to this Court that regardless of who represented Neugebauer, he would have "ignore[d] legal advice," and done "everything he could," "at all costs," "through whatever means necessary" "intentionally" to seize control of GloriFi, or otherwise "let [it] burn." Accordingly, because the Trustee has not and cannot plausibly plead that Chapman's alleged conduct proximately caused GloriFi's alleged damages, the Trustee's negligence and breach-of-fiduciary-duty claims fail as a matter of law.

The Trustee's claims additionally fail as a matter of law because:

- The breach-of-fiduciary-duty claim is an improperly fractured legal-malpractice claim, and the Trustee fails to allege that Chapman received a required improper benefit beyond the mere receipt of attorneys' fees;

- The fraudulent-transfer claims are premised entirely on the establishment of claims for negligence and breach of fiduciary duty, which fail to state a claim; and

- The disallowance claim asks this Court to disallow a proof of claim that Chapman never filed.

Accordingly, Chapman respectfully moves to dismiss the Trustee's claims against Chapman in the Original Complaint (ECF Dkt. No. 1) (the "Complaint") under FED. R. CIV. P. 12(b)(6) made applicable by FED. R. BANKR. P. 7012.[1]

## I.    STATEMENT OF FACTS[2]

1.    On February 8, 2023, GloriFi filed a voluntary petition for chapter 7 bankruptcy in *In re With Purpose, Inc.* (Case No. 23-30246-MVL-7, ECF Dkt. No. 1) (the "GloriFi Bankruptcy").

2.    The Trustee is the duly appointed chapter 7 trustee of GloriFi's Bankruptcy estate.

3.    GloriFi – a financial services company – retained Chapman in 2022 to perform certain work.[3] Specifically, on February 4, 2022, GloriFi and Chapman entered an engagement letter (the "Engagement Letter") memorializing Chapman's "limited representation" of GloriFi in connection with its "proposed credit card program."[4] The Engagement Letter clarified that because

---

[1] Chapman is concurrently filing its Motion to Compel Arbitration and Stay Adversary Proceeding (the "Motion to Compel Arbitration") and Motion to Withdraw the Reference and Supporting Brief. For the reasons stated in the Motion to Compel Arbitration, Chapman respectfully urges that the Motion to Compel Arbitration should be decided before this Motion. If this dispute is not compelled to arbitration, Chapman will exercise its right to demand a jury trial on all issues and does not consent to a jury trial or final orders or judgments by the Bankruptcy Court.

[2] By referencing the Trustee's allegations for purposes of this Motion, Chapman does not accede to or agree to the truth of the allegations or that the Trustee properly states a claim against Chapman.

[3] *See* Complaint ¶ 24 ("In 2022, Chapman . . . sent GloriFi an engagement agreement. . . .").

[4] *See* Appendix Supporting Defendants Chapman and Cutler LLP's and Catherine Rossouw's Motion to Dismiss Trustee's Original Complaint Subject to Motion to Compel Arbitration ("App.") pp. 3-9 (Ex. 1 - Engagement Letter). The Court may consider the Engagement Letter because it is "referred to in the [Trustee's] complaint and [is] central to [his] claim." *See Taylor v. Hartley*, 488 F. Supp. 3d 517, 526 (S.D. Tex. 2020) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)); *In re*

Chapman was "not [GloriFi's] general counsel, [its] acceptance of this engagement d[id] not involve an undertaking to represent [GloriFi's] interests generally."[5]

4.    Chapman concurrently – not jointly – represented Neugebauer on a series of different matters, including, but not limited to, matters involving negotiations of a term sheet and note.[6] Chapman fully disclosed its separate representation of Neugebauer to GloriFi.[7]

5.    On March 30, 2022, Chapman sent GloriFi and Neugebauer a conflict waiver explaining that Chapman represented GloriFi "in connection with its planned credit card securitization program" separate and apart from its representation of Neugebauer and other Neugebauer entities "in connection with certain [other] transactions," which Toby Neugebauer (on behalf of the Neugebauer family and himself) and Dan Murphy (on GloriFi's behalf) responded to and approved on April 1, 2022 ("Conflict Waiver").[8]

6.    On February 7, 2025, the Trustee commenced an adversary proceeding against Neugebauer and Neugebauer Family Enterprises, LLC (the "Neugebauer Adversary Proceeding"), asserting four counts against the Neugebauer defendants, including breach of fiduciary duty and negligence.[9] In the Neugebauer Adversary Proceeding, the Trustee claims that Neugebauer's

---

*Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). *See also* Complaint ¶ 24 (The Engagement Letter "states that 'the Firm will ***not*** represent anyone else in the Matter' . . . [b]ut Chapman Cutler internationally disregarded and breached the terms of its own engagement agreement . . . .").

[5] *See* App. p. 3 (Ex. 1 - Engagement Letter).

[6] *See, e.g.,* Complaint ¶¶ 4, 26-27.

[7] *See id.* ¶¶ 34-35.

[8] App. pp. 10-13 (Exs. 2 and 3 – Set of email chains between Catherine Rossouw, Toby Neugebauer, Bryan Joiner, and Dan Murphy dated March 30, 2022 through April 1, 2022). As set forth above, *supra* note 4, the Court may consider these email chains because the original email, and the purported lack of response to it, are referenced in the Complaint and central to the Trustee's claims.  *See* Complaint ¶¶ 34-35.

[9] App. pp. 14-58 (Ex. 4 - Trustee's Original Complaint in Neugebauer Adversary Proceeding (Case No. 25-03007-MVL; ECF Dkt. 1)). The Court is permitted to take judicial notice of publicly filed pleadings involving certain parties to this suit when considering this Rule 12(b)(6) motion. *See* FED. R. EVID. 201 (allowing Court to take judicial notice "at any stage of the proceeding" of adjudicative facts "that [are] not subject to reasonable dispute"); *Norris v. Hearst Trust,* 500 F.3d 454, 461 n.9 (5th Cir. 2007), citing *Cinel*

"shocking self-dealing, fraud, and gross mismanagement – all [] caused GloriFi to suffer **enormous** monetary harm."[10]

7.   On March 13, 2025, the Trustee commenced this Adversary Proceeding arguing that Chapman breached its duties to GloriFi under the Engagement Letter by performing legal work for its separate client, Neugebauer, on different matters.[11]

8.   On April 28, 2025, Chapman filed the Motion to Compel Arbitration under the Engagement Letter's binding arbitration clause.[12] Chapman respectfully submits that its gatekeeping Motion to Compel Arbitration, currently pending before this Court, should be addressed before this Motion.

## II.   CHAPMAN IS IMMUNE FROM SUIT UNDER THE ATTORNEY IMMUNITY DOCTRINE BECAUSE THE TRUSTEE COMPLAINS ONLY ABOUT CONDUCT WITHIN THE SCOPE OF CHAPMAN'S REPRESENTATION OF NEUGEBAUER.

The Trustee's claims are based on conduct Chapman purportedly took in representing Neugebauer – **not GloriFi** – and thus fail as a matter of law under the attorney immunity doctrine.[13]

---

*v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record."). Courts regularly take judicial notice of pleadings to establish such facts. *See Couch v. Bank of New York Mellon as Tr. for JPMorgan Chase Bank, N.A.*, No. 4:24-CV-00085-O, 2024 WL 846267, at *1, n.1 (N.D. Tex. Feb. 28, 2024) (O'Connor, J.) (taking judicial notice of "matters of public record of which judicial notice may be properly taken at the 12(b)(6) stage, such as prior court proceedings, pleadings, opinions, orders, and judgments attached to the motion to dismiss or otherwise appearing in the record thereof.").

[10] App. p. 19 (Ex. 4 - Trustee's Original Complaint in Neugebauer Adversary Proceeding (Case No. 25-03007-MVL; ECF Dkt. 1)).

[11] *See, e.g.,* Complaint ¶ 35 (Chapman "represent[ed] Mr. Neugebauer and his personal interests against the Firm's other client (GloriFi)").

[12] The Engagement Letter states that "[a]ll other claims arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in New York, New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . . ." App p. 6 (Ex. 1 - Engagement Letter).

[13] The Fifth Circuit has applied attorney immunity as a procedural gatekeeping matter (like statutes of limitations) governed by the rules of Texas as the forum state. *See Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346 (5th Cir. 2016). Because Texas law is clear that in a Texas court "procedural" matters are **always** governed by Texas law, regardless of which "substantive" law may govern the claims (*e.g.*, the elements of the claim), Texas law governs here. *See In re Soporex, Inc.*, 446 B.R. 750, 761 (Bankr. N.D. Tex. 2011) ("Under Texas conflict of law principles, courts apply the non-substantive procedural rules of

Attorney immunity broadly protects attorneys from suits and civil liability to nonclients for conduct in which attorneys engage when representing a client if the "complained-of actions were **part** of [the attorney's] responsibility to his clients, ***even if done improperly***." *Youngkin v. Hines*, 546 S.W.3d 675, 682 (Tex. 2018) (emphasis added); *Ironshore Europe DAC v. Schiff Hardin, L.L.P.,* 912 F.3d 759, 764 (5th Cir. 2019), and cases cited therein.[14]

As courts have held, "[t]he only facts required to support an attorney–immunity defense are the type of conduct at issue and the existence of an attorney–client relationship at the time" the attorney engaged in the conduct. *Youngkin*, 546 S.W.3d at 683; *Ironshore*, 912 F.3d at 766. Once those facts are established, the trial court decides "the ***legal question*** of whether said conduct was within the scope of representation." *Youngkin,* 546 S.W.3d at 683 (emphasis added); *Ironshore,* 912 F.3d at 767; *see also Van Hauen v. Wells Fargo Bank, N.A.*, No. 4:12-CV-344, 2012 WL 4092590, at *1, *3 (E.D. Tex. Aug. 16, 2012) (recommending dismissal of defendant law firm under Rule 12(b)(6), because "conduct of providing legal oversight and assistance with the enforcement of security instruments in real property requires the professional training, skill, and expertise of an attorney" such that law firm was protected by attorney immunity), report and recommendation adopted by 2012 WL 4092516 (E.D. Tex. Sept. 17, 2012).

---

the forum state."). Regardless, the applicable substantive law is determined by the most substantial relationship, which in this case would still likely result in the application of Texas law because Chapman provided legal services to a Texas client that operated in Texas. *See e.g. Streber v. Hunter*, 221 F.3d 701, 719-720 (5th Cir. 2000) (applying the most substantial relationship test to a legal-malpractice claim and finding Texas law governed the Texas client's claims even though the lawyers were located in Louisiana).

[14] As the Fifth Circuit held in *Ironshore*, an order denying a motion to dismiss on the basis of attorney immunity is an appealable collateral order because "attorney immunity is properly characterized as a true immunity from suit, not as a defense to liability." 912 F.3d at 763 (internal citation omitted). A unanimous Fifth Circuit panel also has observed that attorney immunity is "an issue that is completely separate from the merits." *Troice*, 816 F.3d at 345-46. Thus, immunity is properly raised in a motion to dismiss under Rule 12(b)(6). *See LJH, Ltd. v. Jaffe*, No. 4:15-CV-639, 2016 WL 3668170, *8-9 (E.D. Tex. July 11, 2016) (granting a motion to dismiss under Rule 12(b)(6) in favor of a law firm based on attorney immunity).

Here, the Trustee's allegations focus on Chapman's conduct in representing Neugebauer – not GloriFi – on different matters in which this Court is aware GloriFi was represented by numerous other attorneys.[15] Specifically, the Trustee complains that Chapman:

- "represent[ed] Mr. Neugebauer and the interests of his family ***against GloriFi*** in the 'negotiation' of a self-interested term sheet/note . . .";[16]

- "added a provision to Mr. Neugebauer's self-dealing term sheet . . .";[17]

- "added provisions to Mr. Neugebauer's self-interested note . . .";[18]

- "provided Mr. Neugebauer with recommendations for board members to replace Mr. Ayers and Ms. Findley";[19]

- "prepared the legal strategy and necessary documents" for Mr. Neugebauer to remove board members;[20] and

- "helped prepare demand letters to Mr. Ayers and Ms. Findley (who were the independent directors removed from GloriFi's Board by Mr. Neugebauer) . . . ."[21]

Thus, the Trustee argues that Chapman breached its duties to GloriFi under the Engagement Letter solely based on Chapman's alleged conduct in representing ***Neugebauer***.[22]

---

[15] *See* Complaint ¶ 4 ("[T]he Firm both subsequently and simultaneously represented" Neugebauer and his entities.); *id.* ¶ 35 (Chapman "represent[ed] Mr. Neugebauer and his personal interests against the Firm's other client (GloriFi).").

[16] *Id.* ¶ 26.

[17] *Id.* ¶ 27.

[18] *Id.* ¶ 29.

[19] *Id.* ¶ 40.

[20] *Id.*

[21] *Id.* ¶ 47.

[22] The Trustee also complains that Chapman executed a Restructuring Support Agreement ("RSA") during the underlying GloriFi Bankruptcy, *see* Complaint ¶¶ 48-51, but the Trustee does not make a single allegation that Chapman represented either GloriFi or Neugebauer at the time of the RSA (which was ***months*** after the conduct about which the Trustee complains). The Trustee has not alleged (and cannot allege) that Chapman breached any purported duty to GloriFi simply by signing the RSA as an entity to which GloriFi owed money – not as counsel to any party. Contrary to the Trustee's baseless suggestion, Chapman – which did not file the RSA or appear in the GloriFi Bankruptcy – never made any assurances or representations to this Court beyond the indisputable fact that it was owed money by GloriFi.

Chapman's Engagement Letter with GloriFi expressly limited the firm's representation to legal services in connection with the "credit card program" and did "not involve an undertaking to represent [GloriFi's] interests generally."[23] None of the Trustee's allegations, including those listed above, remotely relate to GloriFi's credit card program.

GloriFi is a ***non-client*** for attorney immunity purposes because the Trustee complains about legal work GloriFi did ***for Neugebauer***, regardless of the fact that the Trustee alleges this work breached a separate duty to GloriFi arising under the Engagement Letter. Thus, under the attorney immunity doctrine, the Trustee – in the shoes of GloriFi – is barred from maintaining suit against Chapman for legal services it provided Neugebauer.

## III. THE TRUSTEE FAILED TO PLAUSIBLY PLEAD THAT CHAPMAN PROXIMATELY CAUSED GLORIFI'S ALLEGED DAMAGES.

Under Supreme Court pleading standards, "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Similarly, conclusory statements in a pleading "are not entitled to the assumption of truth." *Id*. at 679-81.

Texas law requires that the Trustee establish a clear causal link between the purported wrongdoing and alleged damages. *See Rogers v. Zanetti*, 518 S.W.3d 394, 404 (Tex. 2017) ("In every case, the plaintiff must supply a causal link between the attorney's alleged negligence and the client's damages."); *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009) (requiring that a breach of duty "proximately caused" the plaintiff's injury to prove a legal-malpractice claim).[24]

---

[23] App. p. 3 (Ex. 1 - Engagement Letter).

[24] Texas law applies because there is no conflict between Texas and New York law on proximate cause. *See R.R. Mgmt. Co., L.L.C. v. CFS Louisiana Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) ("Where there are no differences between the relevant substantive laws of the respective states, there is no conflict, and a court need not undertake a choice of law analysis."). Like Texas law, New York law also requires a

Specifically, the Trustee must plausibly plead that Chapman's conduct was "a substantial factor in bringing about the [alleged] harm" "'but for' [which], the harm would not have occurred." *Stanfield v. Neubaum*, 494 S.W.3d 90, 97 (Tex. 2016) (internal citation omitted); *Rogers*, 518 S.W.3d at 403 ("[O]ur cause-in-fact standard requires not only that the act or omission be a substantial factor but also that it be a ***but-for cause*** of the injury or occurrence.") (emphasis added).

### A.    The Trustee's Conclusory Allegations Fail to Plausibly Plead That Chapman was the "But For" Cause of GloriFi's Purported Injuries.

As previously explained, the alleged "breach" about which the Trustee complains is Chapman's allegedly conflicted concurrent representations of Neugebauer at the same time it was separately representing GloriFi on different matters.[25] But even assuming that the Trustee could establish that this was a breach of duty to GloriFi under the Engagement Letter – which Chapman vehemently denies – the Trustee has not plausibly pled that Chapman's ***purported conflict*** in representing Mr. Neugebauer constitutes the but for cause of ***any*** alleged harm to GloriFi. The Trustee has failed plausibly to plead how "the [purported] breach of a duty of care . . . cause[d] harm, [and thus] no valid claim for legal-malpractice exists" as a matter of law. *See Rogers*, 518 S.W.3d at 400; *see also Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119 (Tex. 2004) ("Breach of the standard of care and causation are separate inquiries . . . and an abundance of evidence as to one cannot substitute for a deficiency of evidence as to the other.").

---

plaintiff to establish proximate cause. *See Reibman v. Senie*, 756 N.Y.S.2d 164, 165 (1st Dept. 2003) ("In order to establish proximate cause, plaintiff must demonstrate that but for the attorney's negligence, plaintiff would have prevailed in the matter in question or would not have sustained any ascertainable damages. . . ."); *Knox v. Aronson, Mayefsky & Sloan, LLP*, 91 N.Y.S.3d 23, 28 (1st Dept. 2018) (affirming the dismissal of the complaint, in part, because the plaintiff failed to establish that "but for" the attorney's purported breach of fiduciary duty the plaintiff would not have incurred damages).

[25] *See e.g.*, Complaint ¶ 21 ("Unfortunately for GloriFi, the Firm was only doing its job for one of its clients (Mr. Neugebauer) and was more than willing to actively and intentionally advance positions adverse to GloriFi. . . .").

The ***only*** allegations in the Complaint about proximate cause are the following conclusory statements, none of which plausibly plead that GloriFi's purported damages would have been avoided "but for" Chapman's allegedly conflicted representation of Neugebauer:

- The "scheme of self-dealing employed ***by Mr. Neugebauer***, with the assistance of Chapman Cutler, . . . ultimately led to the complete loss of investor trust/support and GloriFi's untimely demise."[26]

- "But for the Firm's intentional efforts to assist, and develop the playbook for, ***Mr. Neugebauer in his unrelenting and sustained self-dealing and fraud*** to the Company's extreme detriment, GloriFi would have been able to complete the de-SPAC transaction."[27]

- "Specifically, the Firm's misdeeds and collusion with Mr. Neugebauer was a proximate cause of the investors (and potential investors) losing confidence in GloriFi and the Company's resulting inability to raise the funding needed to close the de-SPAC transaction. The Company would have been able to secure the necessary funding but for the Firm's malfeasance. Instead, the Company now sits in chapter 7 bankruptcy due, at least in large part, to the Firm's conflicted representation, malpractice, and breach of its fiduciary, contractual, and ethical obligations."[28]

These conclusory allegations suggest, at most, that Chapman ***assisted*** Mr. Neugebauer but do not plausibly explain ***how*** Chapman's actions proximately caused ***any*** alleged harm to GloriFi. Instead, the Trustee suggests that ***Neugebauer's conduct*** destroyed GloriFi. The Trustee's conclusory complaints that Chapman's "misdeeds and collusion with Mr. Neugebauer was a proximate cause" of GloriFi's purported damages does not plausibly plead "but for" causation and fails to meet the pleading standard required under *Twombly* and *Iqbal*. *See Twombly*, 550 U.S. at 555 (Federal pleading standards require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *Iqbal*, 556 U.S. 679 ("[A] court

---

[26] Complaint ¶ 26 (emphasis added).

[27] *Id.* ¶ 53 (emphasis added).

[28] *Id.* ¶ 54.

considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").

Tellingly, the Complaint is devoid of a single non-conclusory factual allegation that *but for* Chapman's allegedly conflicted representation, Neugebauer would have acted differently and prevented GloriFi's alleged damages. The Trustee's failure to plausibly allege that Neugebauer (a third-party) would have acted differently *but for* Chapman's alleged wrongs requires dismissal. *See, e.g., Diamond Beach Owners Ass'n v. Stuart Dean Co., Inc.*, No. 3:18-CV-00173, 2018 WL 7291722, at *8 (S.D. Tex. Dec. 21, 2018), report and recommendation adopted, 2019 WL 245462 (S.D. Tex. Jan. 17, 2019) (granting defendant's motion to dismiss because the plaintiff's pleading expressly negated the duty and causation elements of plaintiff's negligence claim); *Tolpo v. Decordova*, 146 S.W.3d 678, 684 (Tex. App.—Beaumont 2004, no pet.) (reversing trial court because plaintiff could not establish causation in negligence case faulting his attorney because plaintiff could not show that the counterparty would have agreed to a desired term in a contract); *Pierre v. Steinbach*, 378 S.W.3d 529, 535 (Tex. App.—Dallas 2012, no pet.) (granting summary judgment because plaintiff could not prove that attorney's misconduct caused plaintiff to lose the benefit of a contract provision when there was no evidence that plaintiff's counterparty ever would have agreed to the missing contract provision); *Harrison v. Taft, Stettinius & Hollister, L.L.P.*, 381 F. App'x 432 (5th Cir. 2010) (affirming summary judgment dismissal because the plaintiff could not show that the shareholders' damages were proximately caused by defendants' alleged negligence, as required to support a legal-malpractice claim).

**B.      The Trustee's Allegations in the Neugebauer Adversary Proceeding Confirm That He Cannot Plausibly Allege Chapman was the "But For" Cause of GloriFi's Purported Harm.**

Although the Trustee's claims should be dismissed on the simple basis that he does not even try to plead that Neugebauer's actions and GloriFi's demise would have been different if

Neugebauer had different counsel (or no counsel), the Trustee's admissions in its parallel Neugebauer Adversary Proceeding confirm that the Trustee could never plausibly plead these required facts. In the Neugebauer Adversary Proceeding, the Trustee repeatedly argues that **Neugebauer alone** was responsible for GloriFi's demise, without any qualification that Neugebauer's conduct somehow would have been different or less destructive in the absence of Chapman's allegedly conflicted representation.

- "It would be easy to explain **GloriFi's dramatic downfall solely on Mr. Neugebauer's gross incompetence**. But the real story of GloriFi's demise cannot be understood without appreciating Mr. Neugebauer's (i) unyielding desire to exercise singular control over the Company *at all costs*, and (ii) complete disregard and disdain for corporate governance and the fiduciary obligations he owed the Company and its many stakeholders."[29]

- "Unfortunately, Mr. Neugebauer proceeded to do **everything he could** to wrestle defeat out of the jaws of victory. To Mr. Neugebauer, control trumped success. His own glory trumped GloriFi's mission. The normal corporate oversight and governance required for public companies was a non-starter. If Mr. Neugebauer alone could not secure all the credit, accolades, and magazine covers, then **Mr. Neugebauer would rather let GloriFi burn** (and, to top it all off, try to fleece the Company's remaining assets on the eve of bankruptcy)."[30]

- "The GloriFi story is a textbook example of an **immensely valuable company being destroyed by its own CEO**, majority shareholder, and Chairman of the Board (*i.e.*, **Mr. Neugebauer**) who **intentionally** breached his duty of loyalty by putting his own self-interests above those of the Company."[31]

- "Neugebauer was focused on forcing through his self-dealing transactions **through whatever means necessary**."[32]

- "[I]t was clear that **Neugebauer's plan was to ignore legal advice** and remove any Board member who insisted on being independent and informed . . . to the extreme detriment, and ultimate demise, of GloriFi."[33]

---

[29]App p. 16 (Ex. 4 - Trustee's Original Complaint in Neugebauer Adversary Proceeding (Case No. 25-03007-MVL; ECF Dkt. 1)) (¶ 4) (emphasis added).

[30] *Id.* p. 17 (¶ 6) (emphasis added).

[31] *Id.* p. 18 (¶ 9) (emphasis added).

[32] *Id.* p. 23 (¶¶ 32) (emphasis added).

[33] *Id.* p. 37 (¶¶ 74) (emphasis added).

Thus, rather than arguing that, "but for" Chapman's allegedly conflicted representations, Neugebauer would have done something different and saved GloriFi from its subsequent demise, the Trustee instead alleges that regardless of who (if anybody) represented him, Neugebauer would have "ignore[d] legal advice" and done "everything he could," "at all costs," "through whatever means necessary" to "intentionally" seize control of GloriFi, or otherwise "let [it] burn."[34] Accordingly, because the Trustee has not and cannot plausibly plead "but for" causation, his negligence and breach-of-fiduciary-duty-claims must be dismissed.

## IV.    THE TRUSTEE'S BREACH-OF-FIDUCIARY-DUTY CLAIM FAILS BECAUSE IT IS BARRED UNDER THE ANTI-FRACTURING RULE.

Under Texas law, "[t]he anti-fracturing rule prevents plaintiffs from converting what are actually professional negligence claims against an attorney into other claims such as . . . breach of fiduciary duty. . . ." *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied).[35] "Merely characterizing conduct as a 'misrepresentation' or 'conflict of interest' does not necessarily transform what is really a professional negligence claim into a . . . breach of fiduciary duty claim." *Id.*

Here, the gist of the Trustee's legal malpractice and breach-of-fiduciary-duty allegations are indistinguishable. Chapman allegedly breached its legal and ethical duties to GloriFi under the Engagement Letter by representing GloriFi at the same time that it was representing Neugebauer

---

[34] *Id.* p. 16, 17, 18, 23, 37 (¶¶ 4, 6, 9, 32, 74).

[35] No conflict of law analysis is required. *See supra* note 24. New York law, like Texas law, rejects redundant claims like breach of fiduciary duty when they are premised upon the same facts and seek identical relief to other legal-malpractice claims. *See Antonelli v. Guastamacchia*, 17 N.Y.S.3d 436, 438 (2nd Dept. 2015) (affirming dismissal of a complaint, in part because plaintiff plead a redundant legal malpractice cause of action); *Cobble Creek Consulting, Inc. v. Sichenzia Ross Friedman Ference LLP*, 973 N.Y.S.2d 595, 596 (1st Dept. 2013) (affirming dismissal of breach-of-fiduciary-duty claims "as duplicative [of legal-malpractice claim], because it was based on the same facts and alleged the same damages as the legal malpractice claim").

on different matters.[36] The Trustee's allegations, at most, sound in negligence, and the Court should discard all other labels and claims. *See Perkins v. Walker*, No. 14-17-00579-CV, 2018 WL 3543525, at *3 (Tex. App.—Houston [14th Dist.] July 24, 2018, no pet.) (holding that breach-of-fiduciary-duty claim was an improperly fractured negligence claim because substance of claim was that attorneys "did not competently fulfill their duties as [plaintiff's] legal counsel" and "did not provide adequate legal representation.").

Accordingly, the Trustee's purported breach-of-fiduciary-duty claim is improperly fractured and must be dismissed under FED. R. CIV. P. 12(b)(6), as made applicable by FED. R. BANK. P. 7012. *See Hou v. Berry Appleman & Leiden, LLP*, No. 3:21-CV-2958-D, 2022 WL 2276903, at *7 (N.D. Tex. June 23, 2022) (Fitzwater, J.) (granting law firm defendant's motion to dismiss plaintiffs' breach-of-fiduciary-duty claim because it violated the Texas anti-fracturing rule "[b]ecause both of plaintiffs' claims are based on the same conduct and the gravamen of both claims is that defendants did not represent them with the degree of care, skill, or diligence as attorneys of ordinary skill and knowledge commonly possess."); *In re Cyr*, No. AP 18-05227-CAG, 2020 WL 10731249, at *4 (W.D. Tex. June 8, 2020) (". . . Plaintiff's breach of fiduciary duty claim is based on the same alleged conduct as his asserted legal malpractice claim and the substance of the claims is indistinguishable. Accordingly, the complaint fails to state a breach of fiduciary duty claim against [the defendant] upon which relief may be granted.").

---

[36] *See e.g.*, Complaint ¶¶ 5, 54 (Chapman "owed GloriFi various fiduciary duties . . . [but] the Firm's loyalty clearly lied with Neugebauer, ***not*** GloriFi [and because of] . . . [Chapman's] misdeeds and collusion with Mr. Neugebauer. . . [GloriFi] now sits in chapter 7 bankruptcy."); *id.* ¶ 48 (The Trustee's Complaint is based on the alleged fallout from Chapman's purported "undying allegiance to Mr. Neugebauer.").

## V.    THE TRUSTEE'S BREACH-OF-FIDUCIARY-DUTY CLAIM ALSO FAILS BECAUSE THE TRUSTEE FAILED TO PROPERLY PLEAD THAT CHAPMAN RECEIVED AN "IMPROPER BENEFIT."

To establish a breach-of-fiduciary-duty claim against an attorney, a plaintiff must plead that the attorney received an "improper benefit" as a result of the alleged breach.[37]  Texas courts consistently hold that attorneys' fees are not enough to confer the requisite improper benefit. *See Won Pak*, 313 S.W.3d at 458; *Ashton v. KoonsFuller, P.C.*, No. 05-16-00130-CV, 2017 WL 1908624, at *4 (Tex. App.—Dallas May 10, 2017, no pet.) ("[Law firm] obtaining its fees is not, standing alone, an improper benefit sufficient to constitute a breach of fiduciary duty.").

The Trustee argues that Chapman received "improper benefits" in the form of "attorney's fees billed by [Chapman] . . . and fees billed to GloriFi. . . ."[38]  Attorneys' fees, without more, are insufficient to constitute an improper benefit as a matter of law.[39]  The Trustee did not (and cannot) plead that Chapman obtained any improper benefit because Chapman only received legal fees for the work it performed on behalf of either GloriFi or Neugebauer. Thus, the Complaint's allegations about Chapman's purported breach of fiduciary duty fail to state a claim because the Trustee fails to identify a legally sufficient improper benefit.

## VI.    THE TRUSTEE'S FRAUDULENT-TRANSFER CLAIMS FOR CHAPMAN'S PRE-PETITION LEGAL SERVICES ALSO FAIL.

The Trustee's fraudulent-transfer claims (and his corollary claim for recovery of voidable transfer) are premised on the theory that GloriFi did not receive reasonably equivalent value for

---

[37] *See Young v. Dwayne R. Day, P.C.*, No. 01-16-00325-CV, 2018 WL 1473931, at *4 (Tex. App.—Houston [1st Dist.] Mar. 27, 2018, pet. denied) ("Absent an allegation that [defendants] actually received an improper benefit, [plaintiffs'] assertions . . . do not state a claim for breach of fiduciary duty.").

[38] Complaint ¶ 60.

[39] *See Vara v. Williams*, No. 03-10-00861-CV, 2013 WL 1315035, at *4, n.4 (Tex. App.—Austin Mar. 28, 2013, no pet.) ("The only benefit to [attorney] that [plaintiff] alleges is attorney's fees from continued representation of [plaintiff]. Such an alleged benefit does not rise to the level of 'improper benefit' generally necessary to constitute a breach of fiduciary duty.").

the attorneys' fees paid because of Chapmans' purported negligence and breach of fiduciary duty. Thus, because the Trustee's negligence and breach-of-fiduciary-duty claims fail for all of the reasons set forth above, *see supra* Sections II-V, the Trustee's fraudulent-transfer claims likewise fail because the Trustee has failed to establish that GloriFi ***did not*** receive reasonably equivalent value.

## VII. THE TRUSTEE'S DISALLOWANCE CLAIM FAILS BECAUSE CHAPMAN NEVER FILED A PROOF OF CLAIM.

Chapman has not filed a proof of claim, as evidenced by the claims register in the GloriFi Bankruptcy proceeding.[40] For this reason alone, Trustee's allegations pertaining to a disallowance claim fail because no claim has been filed for this Court to disallow.

## VIII. CONCLUSION

For the foregoing reasons, Chapman respectfully urges this Court to dismiss all claims against it with prejudice and order such other and further relief to which Chapman is entitled.

---

[40] *See* Northern District of Texas Claims Register for the GloriFi Bankruptcy (Case No. 23-30246-MVL7). The Court is permitted to take judicial notice of its own claims register in the underlying GloriFi Bankruptcy. *See* FED. R. EVID. 201.

Respectfully submitted,

*/s/ George M. Kryder*
George M. Kryder
  State Bar No. 11742900
  gkryder@velaw.com
Jeremy M. Reichman
  State Bar No. 24083722
  jreichman@velaw.com
Michael C. Lee
  State Bar No. 24109461
  mlee@velaw.com
Emalee H. LaFuze
  State Bar No. 24110897
  elafuze@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue, Suite 3900
Dallas, Texas  75201
Telephone: (214) 220-7700

*Attorneys for Defendants Chapman and Cutler LLP
and Catherine Rossouw*

## CERTIFICATE OF SERVICE

I certify that on April 28, 2025, a true and correct copy of the foregoing instrument was served on all counsel of record using the Court's electronic filing system.

*/s/ George M. Kryder*
George M. Kryder